**Slip Op. 12-87**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **MAX FORTUNE INDUSTRIAL LTD., AND MAX FORTUNE (FZ) PAPER PRODUCTS COMPANY LTD.,**<br><br>          **Plaintiffs,**<br><br>     **v.**<br><br>**UNITED STATES,**<br><br>          **Defendant,**<br><br>     **and**<br><br>**SEAMAN PAPER COMPANY OF MASSACHUSETTS,**<br><br>          **Defendant-Intervenor.** | **Before: Gregory W. Carman, Judge**<br><br>Court No. 10-00306 |

[*Plaintiffs' Motion for Judgment on the Agency Record is denied, Plaintiffs' Motion for Oral Argument is denied, and Commerce's Final Results are affirmed.*]

*Francis J. Sailer, Andrew Thomas Schutz, Elaine Fang Wang, Mark E. Pardo,* and *Ned Herman Marshak,* Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, of New York, NY, for Plaintiffs.

*Loren Misha Preheim*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant. On the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson,* Director, *Reginald T. Blades, Jr.*, Assistant Director, United States Department of Justice, and *Scott D. McBride*, Senior Attorney, International Trade, United States Department of Commerce, of Washington, DC.

*Adam Henry Gordon* and *Robert Edward DeFrancesco, III*, Wiley Rein, LLP, of Washington, DC, for Defendant-Intervenor.

Dated: June 18, 2012

## OPINION

CARMAN, JUDGE: Plaintiffs Max Fortune Industrial Ltd. and Max Fortune (FZ) Paper

Products Company, Ltd. (collectively referred to as "Max Fortune" or "Plaintiffs") have

brought this case to challenge the U.S. Department of Commerce's ("Commerce") final

results in the fourth administrative review of *Certain Tissue Paper Products from the*

*People's Republic of China: Final Results of the 2008-2009 Antidumping Duty Admin. Rev.*, 75

Fed. Reg. 63,806 (Oct. 18, 2010) ("*Final Results*").  Max Fortune, a respondent in the

underlying review, has moved for judgment on the agency record pursuant to Rule 56.2

of the Rules of the U.S. Court of International Trade.  The United States—Defendant in

this case—and Seaman Paper Company of Massachusetts–Petitioner in the underlying

review and Defendant-Intervenor in this case ("Seaman MA," "Petitioner," or

"Defendant-Intervenor")—oppose Plaintiffs' motion.  This Court has jurisdiction

pursuant to 28 U.S.C. § 1581(c) (2006).

For the reasons set forth below, this Court holds that Commerce's application of

total adverse facts available ("AFA") is supported by substantial evidence on the record

and otherwise in accordance with law and that Plaintiffs were afforded a fair

proceeding.

## I. Background

**A.      Procedural History of Antidumping Case**

On March 30, 2005, Commerce issued an antidumping duty order on certain

tissue paper products from the People's Republic of China ("PRC").  *Notice of Amended*

*Final Determination of Sales at Less than Fair Value and Antidumping Duty Order: Certain*

*Tissue Paper Products from the People's Republic of China*, 70 Fed. Reg. 16,223 (Mar. 30,

2005) ("Antidumping Duty Order").  Max Fortune was a respondent[1] in the original

investigation.  All respondents received a 112.64% duty margin, which was also the

country wide rate.  *Id*. at 16,224.  Subsequently, four administrative reviews and an

expedited sunset review were conducted.  Because of the unusual fluctuation of Max

Fortune's dumping margin throughout the case history, a summary of Max Fortune's

duty margins for the corresponding periods of review ("POR") is set forth below:

---

[1] While not a mandatory respondent in the original investigation, Max Fortune
was one of the twelve companies that requested a separate rate, collectively referred to
as "Section A Respondents" by Commerce.  *Notice of Final Determination of Sales at Less
Than Fair Value: Certain Tissue Paper Products from the People's Republic of China*, 70 Fed.
Reg. 7,475 (Feb. 14, 2005).

| Procedural History of Antidumping Case | Max Fortune's Duty Margin |
|---|---|
| **Antidumping Duty Order**<br>POR: 7/31/03–12/31/03<br>*Notice of Amended Final Determination of Sales at Less than Fair Value and Antidumping Duty Order: Certain Tissue Paper Products from the People's Republic of China*, 70 Fed. Reg. 16,223 (Mar. 30, 2005) | 112.64% |
| **1st Administrative Review**<br>POR: 9/21/04–2/28/06<br>*Certain Tissue Paper Products from the People's Republic of China: Final Results and Final Rescission, In Part, of Antidumping Duty Admin. Rev.*, 72 Fed. Reg. 58,642 (Oct. 16, 2007) | 0.07% |
| **2nd Administrative Review**<br>POR: 3/1/06–2/28/07<br>*Certain Tissue Paper Products from the People's Republic of China: Final Results and Final Rescission, in Part, of Antidumping Duty Admin. Rev.*, 73 Fed. Reg. 58,113 (Oct. 6, 2008) | 0.0% |
| **3rd Administrative Review**<br>POR: 3/1/07–2/29/08<br>*Certain Tissue Paper Products From the People's Republic of China: Final Results and Partial Rescission of the 2007–2008 Antidumping Duty Admin. Rev. and Determination Not To Revoke in Part*, 74 Fed. Reg. 52,176 (Oct. 9, 2009) | 14.25% |
| **4th Administrative Review**<br>POR: 3/1/08-2/28/09<br>*Certain Tissue Paper Products from the People's Republic of China: Final Results of the 2008–2009 Antidumping Duty Admin. Rev.*, 75 Fed. Reg. 63,806 (Oct. 18, 2010) | 112.64% |
| **Expedited Sunset Review**<br>*Certain Tissue Paper Products from the People's Republic of China: Final Results of Expedited Sunset Rev.*, 75 Fed. Reg. 32,910 (June 10, 2010) | 112.64% |

The fourth administrative review is at issue in this appeal.  The POR is March 1, 2008 to February 28, 2009.

### B.      Statement of Facts

On March 2, 2009, Commerce published a notice of opportunity to request an

administrative review of the Antidumping Duty Order.  *Antidumping or Countervailing*

*Duty Order, Finding, or Suspended Investigation; Opportunity to Request Admin. Rev.*, 74

Fed. Reg. 9,077 (Mar. 2, 2009).  Petitioner Seaman MA claims that "over the course of

each of these reviews, rumors concerning Max Fortune's production operations

persisted."  Resp. Br. of Seaman Paper Company of Massachusetts, Inc. ("Def.-Int. Br.")

at 7.  Accordingly, Seaman MA hired a private company, a foreign market researcher

("FMR"),[2] to investigate Max Fortune's production operations.

On March 31, 2009, Commerce received a timely request from Seaman MA to

review Max Fortune.  *Certain Tissue Paper Products from the People's Republic of China:*

*Preliminary Results of the 2008–2009 Admin. Rev.*, 75 Fed. Reg. 18,812 (Apr. 13, 2010)

("*Preliminary Results*").  Consequently, on April 29, 2009, Commerce issued an

antidumping questionnaire to Max Fortune.  *Id.*

On September 15, 2009, the Petitioner alleged that Max Fortune lied to

Commerce about its use of third party suppliers and packers and placed on the agency

record a large number of documents detailing Max Fortune's sales transactions and

---

[2]  The identity of the FMR is confidential under an Administrative Protective Order ("APO") pursuant to 19 U.S.C. § 1677f(b) and 19 C.F.R. § 351.105.

supporting the allegations that Max Fortune did not report multiple affiliates and

unaffiliated suppliers of raw materials and converting services involved in their

production of the subject merchandise exported to the United States during the POR.

Letter from Petitioner to Commerce, Re: Submission of Factual Information and

Analysis Regarding Max Fortune, dated September 15, 2009 (C.R.[3] 20) ("Petitioner Sept.

15th Submission").  These voluminous documents directly tied to specific United States

sales reported by Max Fortune.  The FMR obtained these documents from a Chinese

Informant.[4]

On October 19, 2009, Max Fortune, represented by Shanghai Yuet Fai

Commercial Consulting Company, Ltd.,[5] denied both allegations, asserting that none of

the affiliates, suppliers or services listed by the Petitioner were involved in the

production or sale of its subject merchandise.  Letter from Max Fortune to Commerce,

Re: Response to Petitioner's Factual Info Submission, dated Oct. 19, 2009 (C.R. 22).  Max

Fortune explained that it was contracted to pack paper for a Chinese trading company[6]

---

[3] "C.R." refers to the Confidential Record.

[4] The identity of the Chinese Informant is confidential under the APO.

[5] This Chinese company represented Max Fortune until the publication of the Preliminary Results, when Max Fortune retained U.S.-based counsel Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP ("Grunfeld").

[6] The identity of the Chinese trading company is confidential under the APO.

and decided to outsource this service to a Chinese processing and packing company.[7]

Max Fortune stated its involvement with these other two companies were "merely

commission transactions," and therefore, Max Fortune decided not to list these

transactions or companies in its factors of production ("FOP") to Commerce.  Br. in

Supp. of Pls.' R. 56.2 Mot. for J. upon the Agency Record ("Pls.' Mot.") at 6.  Max

Fortune reasserted that it "did not outsource its packing services for its production of

subject merchandise shipped to the United States to any packers or processors during

the POR" and "questioned the veracity of the information provided by" the FMR.  Pls.'

Mot. at 7.

On October 26, 2009, Commerce met with the Petitioner to get clarification of the

documents and allegations that it had placed on the record.  Def.'s Opp. to Pls.' Mot. for

J. upon the Agency Record ("Def.'s Opp.") at 4.  Shortly thereafter, there was an

incident[8] that affected the Chinese Informant, which Max Fortune claims compromised

the authenticity and reliability of the documents placed on the record.  Pls.' Mot. at 7–8.

On December 16, 2009, Commerce conducted a telephonic interview with the

FMR to confirm its credentials and procedures because it noted that the Petitioner's

"submission had been gathered and analyzed by a foreign market researcher."  Def.'s

---

[7] The identity of the Chinese processing and packing company is confidential under the APO.

[8] The circumstances surrounding the "incident" are confidential under the APO.

Opp. at 4.

On December 20, 2009, Commerce issued verification agendas to Max Fortune and the Chinese Informant.  *Id.*  On January 8, 2010, the Chinese Informant appeared as an interested party in the proceeding for the purposes of the verification.  Def.-Int. Br. at 13.  From January 11 to 18, 2010, Commerce conducted verification at Max Fortune. Pls.' Mot. at 10.  Commerce also conducted verification at the Chinese Informant's facilities.[9]  Def.'s Opp. at 4.  Despite the above-referenced incident that affected the Chinese Informant, Commerce stated that it was able to verify with "source documentation in the [Chinese Informant's] possession" the information that was placed on the record from the Petitioner.  Def.'s Opp. at 20.

Comparing the information from Max Fortune and the Chinese Informant during verification, Commerce decided that "the Chinese Informant supplied much more detailed . . . documents on the record with regard to a number Max Fortune's United States transactions than those supplied by Max Fortune" and the Chinese Informant's documents were "of a higher quality <u>and</u> a larger quantity."  Def.'s Opp. at 20 (emphasis in original).

On April 13, 2010, Commerce issued its preliminary results, applying total AFA and assigning a 112.64% duty margin to Max Fortune.  *Preliminary Results* at 18,814–815.

---

[9] The dates of the verification at the Chinese Informant's facilities are confidential under the APO.

On May 5, 2010, Max Fortune retained U.S.-based counsel who appeared in the

proceeding and also represents Max Fortune in the current litigation.  Pls.' Mot. at 14.

Pursuant to 19 U.S.C. § 1677f(c)(1) and 19 C.F.R. § § 351.304–305, Max Fortune's new

counsel was permitted to review the proprietary submissions and data.  On June 1,

2010, Max Fortune's counsel asserted that the Petitioner's submissions were abusively

"over-bracketed."  Letter from Grunfeld to Commerce, Re: Obj. to Petitioner's Double

Brackets and Claims of Proprietary Treatment, dated June 1, 2010 (P.R.[10] 134; C.R. 55).

Commerce declined to reveal the name of the FMR, which was double-bracketed, to

Max Fortune or its counsel.  Def.'s Opp. at 33–34.

On October 18, 2010, Commerce issued its final results, affirming both its

preliminary application of total AFA and the resultant assignment of a 112.64% duty

margin to Max Fortune.  *Final Results*.

## II. Standard of Review

For administrative reviews of antidumping duty orders, this Court sustains

determinations, findings or conclusions of Commerce unless they are "unsupported by

substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C.

§ 1516a(b)(1)(B)(i).   This Court must defer to Commerce's reasonable interpretation of a

statute even if it might have adopted another interpretation had the question first arisen

---

[10] "P.R." refers to the Public Record.

in a judicial proceeding.  *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450 (1978).

## III. DISCUSSION

Max Fortune challenges Commerce's application of total AFA and decision to keep confidential the documents under the APO as unsupported by substantial evidence on the record or otherwise not accordance with law.  The two issues are discussed below.

### A.     Total Adverse Facts Available

The first issue presented is whether Commerce's application of total AFA is supported by substantial evidence on the record or otherwise in accordance with law. Max Fortune contends Commerce's application of total AFA was improper for two reasons.  First, Max Fortune asserts that Commerce's "rudimentary . . . verification" of the Chinese Informant was contrary to established practice of verifying information with original source documents.  Pls.' Mot. at 20.  Max Fortune contends that Commerce was unable to verify the Chinese Informant's "information using actual business documents and records maintained by [the Chinese Informant] in its normal course of business" during verification.  *Id*.  Commerce counters that it was able to verify and corroborate the information on the agency record with primary "source documentation" at the Chinese Informant's facilities during verification.

Second, Max Fortune argues that the Chinese Informant's documents contained

numerous irregularities and anomalies, and therefore Commerce should not have relied

on these documents. Pls.' Mot. at 26.  Commerce asserts that a few date and time

inconsistencies in the enormous amount of electronic documentation "do not impugn

the authenticity and integrity of the information contained within all, or even some, of

the electronic submissions."  *Issues & Decisions Mem. for the Final Results of the 2008–2009*

*Admin. Rev. of Certain Tissue Paper Prods. from the People's Republic of China*, at 8 (Oct. 12,

2010) ("*I&D Memo*").  Commerce advises that it corroborated the information on the

agency record with original source documents, not with electronic documents that

allegedly contained the irregularities.  Def.'s Opp. at 15.  Commerce further notes that

the Petitioner Seaman MA also provided reasonable explanations for the irregularities

and anomalies.  *I&D Memo* at 8.

        Seaman MA supports Commerce's position that it "reviewed the original source

files" of the Chinese Informant's "financial statements, sales ledgers, trial balances, and

charts of accounts,"[11] Def.-Int.'s Br. at 15 (emphasis in original), and that the minor

discrepancies or irregularities in the Chinese Informant's information could be

explained or were inconsequential, *id*. at 30.  Further, Seaman MA asserts that

---

[11] Seaman MA asserts that Commerce "carefully tested" the Chinese Informant's information, using techniques that traced and reconciled the orders received from Max Fortune through the Chinese Informant's labor, payroll and financial records.  Def.-Int.'s Br. at 15.

placement of the Chinese Informant's documents on the record demonstrates that Max

Fortune "altered documents and deliberately submitted incorrect data." *Id*. at 37–38.

    When presented with two sets of facts and the "totality of the evidence does not

illuminate a black-and-white answer to a disputed issue, it is the role of the expert

factfinder . . . to decide which side's evidence to believe." *Nippon Steel Corp. et al. v.*

*United States*, 458 F.3d 1345, 1359 (Fed. Cir. 2006).  In an antidumping administrative

review, Commerce is the expert factfinder, and "so long as there is adequate basis in

support of [Commerce's] choice of evidentiary weight," this Court must defer to

Commerce.  *Id*. at 1358.  Under the substantial evidence standard of review, "[e]ven if it

is possible to draw two inconsistent conclusions from evidence in the record, such a

possibility does not prevent [Commerce's] determination from being supported by

substantial evidence." *Nippon Steel*, 458 F.3d at 1358 (*quoting Am. Silicon Techs. v. United*

*States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001)).

     In the instant case, Commerce was presented with two sets of contradictory

evidence on the record.  Respondent Max Fortune claimed that it has a fully integrated

production operation and provided supporting documents.  Letter from Max Fortune to

Commerce, Re: Max Fortune Response to Questionnaire Section A, dated June 8, 2009

(C.R. 1); Letter from Max Fortune to Commerce, Re: Max Fortune Response to

Questionnaire Sections C &D, dated July 6, 2009 (C.R. 5).  Petitioner Seaman MA

countered that Max Fortune deliberately misled Commerce and placed on the record a

multitude of supporting documents.  Petitioner Sept 15th Submission.

Because two competing sets of data were placed on the record, Commerce

decided to conduct verifications on both sets of documents.  Mem. to the File by

Commerce, Re: Verification of Data Submitted by Chinese Informant, dated Apr. 7, 2010

(C.R. 49); Mem. to the File by Commerce, Re: Verification of Data Submitted by Max

Fortune, dated Apr. 7, 2010 (C.R. 51).  While reviewing the Chinese Informant's original

source documents during an on-site verification, Commerce noted that the Chinese

Informant "kept detailed inventory records for accountability reasons" so that

Commerce was able to verify "detailed books and records" and to directly "tie the

Chinese Informant's" information to a substantial amount of "Max Fortune's United

States transactions."  Def.'s Opp. at 12–13.

After it "critically reviewed" both sets of data, Commerce determined that the

Chinese Informant's documentation was authentic.  *I&D Memo* at 6.  Commerce

concluded:

> Max Fortune withheld critical information (i.e., the identities of
> additional tissue paper suppliers and/or processors associated
> with the tissue paper it sold to the United States during the
> POR, and their respective factors of production (FOP) data,
> and in so doing, significantly impeded this proceeding and
> precluded [Commerce] from being able to calculate an accurate
> dumping margin for Max Fortune in this review based on its
> reported data.  Further, we stated that we did not believe that

> the documentation supplied by Max Fortune was the actual
> documentation used in the transactions Max Fortune reported
> in its questionnaire response when compared against the
> documentation supplied by the other company which we also
> examined at verification.

*Id.* at 3; Mem. to the File by Commerce, Re: Whether to Assign [Max Fortune] a Margin

Based on Adverse Facts Available in the Preliminary Results, dated Apr. 7, 2010, at 10

(C.R. 48) ("AFA Memo"); Mem. to the File by Commerce, Re: Analysis of Data-Specific

Items Raised in the Case Brief Submitted by [Max Fortune], dated Oct. 12, 2010 (C.R. 61)

("Analysis Memo").  Max Fortune's hypothesis—that if the Chinese Informant's

documents "had not been placed on the record" then Commerce "would have

concluded that the information submitted by Max Fortune was complete and

accurate"—is inapposite.  Pls.' Mot. at 15.

Upon review of the record and consideration of the pleadings, this Court finds

that there is substantial evidence on the agency record that Commerce conducted

thorough analyses and detailed verifications of the sets of documents from both Max

Fortune and the Chinese Informant.  Commerce's conclusion that the Chinese

Informant's information was corroborated and verified is supported by substantial

evidence on the record.  Contrary to Max Fortune's assertions, it is the role of the

agency as the factfinder, not of this Court, to determine authenticity between

contradictory sets of documents where both are supported by substantial evidence on

the record.  *Nippon Steel*, 458 F.3d at 1359.  Thus, this Court declines Max Fortune's

invitation to substitute its judgment for that of Commerce.

　　Based on a review of "the entire administrative record," Commerce found that

Max Fortune "did not act to the best of its ability in providing information" to

Commerce so that application of total AFA was "appropriate with respect to Max

Fortune."  *I&D Memo* at 5.  In its capacity as expert factfinder, Commerce analyzed the

agency record, and conducted interviews and verifications.  Commerce determined that

"Max Fortune withheld critical information (i.e., the identities of additional tissue paper

suppliers and/or processors associated with the tissue paper it sold to the United States

during the POR, and their respective factors of production (FOP) data)," which

"significantly impeded the proceeding."  *I&D Memo* at 3, 5.

　　Pursuant to 19 U.S.C. § 1677e, Commerce is allowed to apply AFA, total or

partial, to a party that does not act to the best of its ability to comply with a request for

information.  It is well-established that Commerce enjoys broad discretion "when a

respondent is uncooperative by failing to provide or withholding information."  *PAM,*

*S.p.A. v. United States*, 582 F.3d 1336, 1340 (Fed. Cir. 2009).  The Federal Circuit recently

reiterated that "Commerce's ability to apply adverse facts is an important one."  *Essar*

*Steel Ltd. v. United States*, 2012 WL 1450024 at *7 (Fed. Cir. 2012) (*quoting Rhone Poulenc,*

*Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)).  Because Commerce found that

Max Fortune withheld information, which is evidenced on the agency record, it was

within Commerce's authority to apply total AFA to Max Fortune.  AFA Memo, *I&D

Memo*.

      The only point that Plaintiffs and Defendant agree upon, technically, at least, is

that this is a case of first impression in that the documents relied upon by Commerce

were provided by a third party source, the Chinese Informant.  *I&D Memo* at 9.  This

Court notes that while the Chinese Informant was a third party when its documents

were placed on the record by the Petitioner, the Chinese Informant entered an

appearance through U.S.-based counsel on January 8, 2010 for the purposes of

participating in the verification and thus became an interested party in the review

pursuant to 19 U.S.C. § 1677(9)(A).  The Petitioner properly placed the third party's

information on the record, and Commerce amply demonstrated that it analyzed and

verified the third party information throughout the record.  Accordingly, Court finds

that the timing of the information being placed on the record—when the Chinese

Informant was a third party and before it became an interested party—does not

invalidate Commerce's verification of and reliance on the documents.

      For the foregoing reasons, this Court holds that Commerce's decision to apply

total AFA to Max Fortune is supported by substantial evidence on the record and

otherwise in accordance with law.

### B.      Business Proprietary Treatment

The second issue presented is whether Commerce's decision to grant confidential

proprietary treatment to the Chinese Informant's business documents deprived

Plaintiffs of the right to defend themselves and to a fair proceeding.  Max Fortune

contends that it "was found guilty of submitting fraudulent documents" to Commerce

"without being afforded the opportunity to confront its accuser . . . or to inspect any of

the evidence" presented by the Chinese Informant.  Pls.' Mot. at 32–33.  Commerce

counters that it "may restrict access to limited information for parties subject to an

administrative protective order if there is 'clear and compelling need to withhold' that

information 'from disclosure'" (citing 19 U.S.C. § 1677f(c)(1) and 19 C.F.R. §

351.304(b)(2)(i)).  Def.'s Opp. at 33.

Pursuant to 19 C.F.R. § 351.304(b)(2)(i), parties may request that certain

information be double-bracketed, which means that only Commerce is permitted access

to the information.  The record indicates that the Petitioner requested that the name of

the FMR be double bracketed because "to reveal that information could prove a danger

to the researcher and the researcher's methods of obtaining information in the future."

Def.'s Opp. at 33.  Commerce found this explanation compelling and agreed to grant

confidential treatment.  *Id*.

First, this Court points out that this is a civil, not criminal, case, notwithstanding

the *noir*-style fashioning of the facts and arguments by the parties.  Max Fortune cites to

no statutory or regulatory authority to support its proposition that it has a "right to

confront its accuser," Pls.' Mot. at 32, and this Court declines Max Fortune's plea to read

such a right into an administrative proceeding.[12]  Next, this Court recognizes that

protecting the business name and trade secrets of an information source, supplier, or

other third party is a necessary tool for Commerce to facilitate forthcoming and frank

information gathering during an investigation.  Finally, this Court takes seriously any

allegation that a party to a proceeding did not receive fair treatment.

In the instant case, the Petitioner requested that the information identified in

single brackets be released to parties approved by Commerce (*i.e.*, counsel, consultants)

under the APO, while information identified in double brackets be released solely to

Commerce.  Def.-Int. Br. at 10.  Only the identifying information of the FMR was

double-bracketed, while all the substantive documents were single-bracketed and thus

available to Max Fortune's counsel.  *Id.* at 10–11.  Defendant-Intervenor stresses, and

this Court agrees, that the information that Max Fortune wants released under the APO

is business proprietary information which belongs to the Chinese Informant, even if the

---

[12] Plaintiff couches its contention in Sixth Amendment terminology but does not actually invoke it.  The Sixth Amendment is only applicable to criminal prosecutions.  *See* U.S. Const. amend. VI.  *See also Pasco Terminals, Inc. v. United States*, 83 Cust. Ct. 65, 477 F. Supp. 201, 213 (1979) ("When . . . agencies are conducting nonadjudicative, fact-finding investigations, rights such as . . . confrontation, and cross-examination generally do not obtain.").

documents contain information about Max Fortune.  Def.-Int. Br. at 36.  Max Fortune

admits that Commerce "normally does not allow parties (as distinct from their counsel)

access to business proprietary information," but argues that because Max Fortune's

circumstances are "extraordinary," Commerce should have made an exception for Max

Fortune.  Pls.' Mot. at 33.  Commerce explained why it declined Max Fortune's request:

> It is Commerce's policy to allow a respondent access to
> proprietary documentation when documentation is
> unquestionably the respondent's own documentation.
> However, Commerce does not allow such access in cases like
> this case, when the issue concerns the truthfulness of the
> respondent's questionnaire responses and the authenticity of
> the documents themselves.

Def.'s Opp. at 30.  Commerce's decision not to make an exception for Max Fortune is

reasoned, conforms with its past practice, and is supported by evidence on the record.

Therefore, this Court will not require Commerce to depart from its past practice of

granting proprietary treatment to business information.

        This Court next notes that Max Fortune's counsel had access to all of the

substantive proprietary documents pertaining to Max Fortune and also that "Max

Fortune was provided with sufficient public information to have notice of, and to

respond to, the allegations made against it."  Def.'s Opp. at 32.  Commerce determined

that the public summaries were sufficient to provide a meaningful opportunity for Max

Fortune to respond.  *Id.*  Max Fortune contends that it has the right to examine the

Chinese Informant's documents and to determine their authenticity, but that is actually

the role of Commerce in an antidumping administrative proceeding.  Throughout the

administrative review, Max Fortune had abundant notice of the Petitioner's allegations

that Max Fortune did not report all of the factors of production.  Def.'s Opp. at 32.  Max

Fortune's awareness of the Petitioner's allegations is evidenced by its own submissions

denying these allegations.  Max Fortune Response to Seaman's Sept. 15, 2009

Submission, dated Oct. 19, 2009 (C.R. 22).  Accordingly, Max Fortune's contention that it

did not receive a fair proceeding is not supported by evidence on the record.  Upon a

thorough review of the record, this Court finds that Max Fortune was afforded a

complete and fair proceeding.

For the foregoing reasons, this Court holds that Commerce's decision to treat

certain information as proprietary is supported by substantial evidence on the record

and otherwise in accordance with law.

## IV.  CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Judgment on the Agency

Record pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade is

**DENIED,** Plaintiffs' Motion for Oral Argument is **DENIED**, and Commerce's *Final*

*Results* in the fourth administrative review are **AFFIRMED**.

/s/ Gregory W. Carman
Gregory W. Carman, Judge

Dated:        June 18, 2012
              New York, NY

## UNITED STATES COURT OF INTERNATIONAL TRADE

**MAX FORTUNE INDUSTRIAL LTD., AND
MAX FORTUNE (FZ) PAPER PRODUCTS
COMPANY LTD.,**

       **Plaintiffs,**

   **v.**

**UNITED STATES,**

      **Defendant,**

  **and**

**SEAMAN PAPER COMPANY OF
MASSACHUSETTS,**

    **Defendant-Intervenor.**

**Before: Gregory W. Carman, Judge**

Court No. 10-00306

## <u>JUDGMENT</u>

    This case having been submitted for decision; and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is hereby

    **ORDERED** that Plaintiffs' Motion for Judgment on the Agency Record be, and hereby is, denied;

    **ORDERED** that Plaintiffs' Motion for Oral Argument be, and hereby is, denied; and it is further

     **ORDERED** that the final results of the fourth administrative review in *Certain Tissue Paper Products from the People's Republic of China: Final Results of the 2008–2009 Antidumping Duty Admin. Rev.*, 75 Fed. Reg. 63,806 (Oct. 18, 2010) be, and hereby are, affirmed.

/s/ Gregory W. Carman
Gregory W. Carman, Judge

Dated:      June 18, 2012
            New York, NY